UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WASCO, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:25-cv-00353 |
| ADENA CORPORTION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This litigation arose from a dispute on subcontract work. Defendant Adena Corporation ("Adena") was hired by Plaintiff Wasco, Inc. ("Wasco") to work on a construction project at Carson-Newman University in Jefferson City, Tennessee. After Adena failed to pay Wasco for subcontracting work it completed, Wasco brought this breach of contract and Tennessee Prompt Pay Act ("TPPA" or "Act") action against Adena.

Now before the Court is Adena's Motion to Transfer Venue (Doc. No. 14), which has been fully briefed and is ripe for review (Doc. Nos. 14–15, 17–18, 20).[1] Also before the Court is Adena's Motion to Ascertain Status of its Motion to Transfer Venue (Doc. No. 24), requesting the Court rule on its Motion (Doc. No. 14) prior to the parties' October 3, 2025 mediation. (Doc. No. 24). For the reasons set forth below, the Court will grant Adena's Motion to Ascertain Status (Doc. No. 24) and deny Adena's Motion to Transfer Venue (Doc. No. 14).

---

[1] Contrary to this Court's Local Rules, Wasco filed a 9-page sur-reply, with an attachment, without first seeking leave of Court to do so. (See Doc. No. 20); see also M.D. Tenn. L.R. 7.01 (only providing for a motion, supporting memorandum of law, a response, and an optional reply for a given motion). Given Wasco's failure to abide by Local Rule 7.01, the Court will not consider Wasco's improper sur-reply and attachment in ruling on the instant motion. See Weil v. Neary, 278 U.S. 160, 169 (1929) (local rules have the "force of law").

## I. BACKGROUND AND FACTUAL ALLEGATIONS[2]

Wasco is a for-profit contractor incorporated in the State of Tennessee with a principal place of business in Nashville. (Doc. No. 1 ¶¶ 1, 5). Adena is a for-profit contractor incorporated in Ohio with a principal place of business in Mansfield, Ohio. (Id. ¶¶ 2, 5). On October 11, 2023, Wasco and Adena entered into a subcontract ("Subcontract"). (Id. ¶ 5). Under the Subcontract, Wasco would serve as a remote contractor to provide labor, materials, equipment and services for masonry work to be done on a construction project at Carson-Newman University located in Jefferson City, Tennessee ("Project"). (Id.). In return, Adena would pay Wasco for the completed work and materials it provided. (Id. ¶¶ 6–7). Pursuant to the Subcontract, Adena would also withhold 5% from each progress payment paid to Wasco ("Retainage"). (Id. ¶¶ 8–9).

Wasco completed the work required and submitted the necessary invoices to Adena. (Id. ¶¶ 11, 15, 19). But, Wasco alleges that Adena failed to timely pay and failed to properly escrow the Retainage. (Id. ¶¶ 11, 18, 20). After Adena's late payment, on November 26, 2024, Wasco served Adena with a notice that it had not been paid for the work or materials provided pursuant to the Subcontract. (Id. ¶ 12). Wasco also advised Adena that it intended to pursue its remedies pursuant to the Act. (Id.). Adena did not timely or adequately respond to Wasco's notice, and did not provide a justification for its refusal to pay Wasco. (Id. ¶ 13). As of the date of the filing of the instant action, Adena owed Wasco $845,205.07 for labor, materials, equipment, and services under the Subcontract. (Id. ¶ 14).

Adena filed counterclaims on May 6, 2025. (Doc. No. 16). Adena alleges that between October 2023 and March 2024, Adena reviewed and paid all of Wasco's submitted payments in a

---

[2] The Court draws the facts in this section from the Complaint (Doc. No. 1), attached exhibit, and Adena's Answer and Counterclaim (Doc. No. 16) for purposes of ruling on the instant motion.

2

timely fashion.  (Id. ¶ 34).  Such payments were made to Wasco's project manager, Colby Smith ("Smith").  (Id.).

According to Adena, in November 2023, Wasco's business email system was compromised and infiltrated by a third-party for the purposes of committing fraud.  (Id. ¶ 38).  That third party, posing as Smith, sent an "updated" W-9 and a new mailing address for Wasco's payments.  (Id. ¶ 40).  The imposter, posing as Smith, also stated that Wasco had been acquired by Lykel Logistics LLC ("Lykel").  (Id. ¶ 41).  Wasco failed to inform Adena that it had been hacked and that such information was inaccurate.  So Adena sent checks to the new address provided by the imposter.  (Id. ¶ 43).  After the imposter cashed the check in February 2024, Smith emailed Adena that payment to Wasco was past due.  (Id. ¶ 46).  Adena informed Smith that it had sent the check to the new address provided by the imposter, who it still believed to be Smith.  (Id. ¶ 47).  In response, Wasco finally informed Adena that its business email had been hacked, and that a third-party perpetrated a fraud against the parties by impersonating Smith.  (Id. ¶ 49).  Adena brings declaratory judgment and breach of contract counterclaims against Wasco.  (Id. ¶¶ 60–93).

## II.  LEGAL STANDARD

Adena brings its motion to transfer this case to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a).  Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In enacting Section 1404(a), "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness."  Kerobo v. SW. Clean Fuels Corp., 285 F.3d 531, 537 (6th Cir. 2002); see Jackson v. L & F Martin Landscape, 421 Fed. App'x 482, 484 (6th Cir. 2009) (Section 1404(a) provides courts

"broad discretion" in determining whether transfer is appropriate); Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955) (same).

A Court's inquiry into the convenience and fairness of a particular forum is guided by factors implicating both "the private interests of the parties," as well as "other public interest concerns." Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991). "The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." Hefferan v. Ethicon Endo-Surgery, Inc., 828 F.3d 488, 498 (6th Cir. 2016). Indeed, "unless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Reese v. CNH America LLC, 574 F.3d 315, 320 (6th Cir. 2009) (citation and quotations omitted).

### III. ANALYSIS

The parties dispute whether the private interests of the parties and the public interest weighs in favor of transfer to the Eastern District of Tennessee.

1. Private Interest Factors

The Court starts by considering the private interest factors. See Moses, 929 F.2d at 1137. "Private-interest factors include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Hefferan, 828 F.3d at 498 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)); see Oakley v. Remy Intern., Inc., 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010) (private interest factors include "(1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum") (citations omitted). In examining these

4

factors, "'the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.'" Hefferan, 828 F.3d at 498 (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988)). Each factor will be addressed in turn.

### A. Wasco's Choice of Forum

As an initial matter, "[g]enerally, one of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum." Smith v. Kyphon, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008); see Warrick v. Gen. Elec. Co., 70 F.3d 736, 741 (2d Cir. 1995) (per curiam). But this deference is diminished in circumstances where, for example "plaintiffs do not reside in their chosen forum," W.H. by and through M.H. D.R. v. Tenn Dep't of Educ., 2016 WL 236996, at *3 (M.D. Tenn. Jan. 20, 2016), or where the operative facts occurred elsewhere, Tenn v. Gibbons, 2017 WL 4535947, at *3 (M.D. Tenn. Oct. 10, 2017).

The Court gives Wasco's choice of forum in this District significant weight, as it was Wasco's right to bring suit here. The Court notes Adena's point that the operative facts may have occurred in other locations such as Jefferson City (*i.e.*, the Project's location) or Ohio (*i.e.*, where Adena decided to make, or not make, Wasco's payment, and where the parties agree the Subcontract's forum selection clause is located).[3] However, these circumstances alone do not warrant this Court disturbing deference to Wasco's choice of venue, given its principal place of business is in Nashville, and there is equal possibility that relevant evidence—including whether

---

[3] "A forum-selection clause in a contract is one of the factors to consider" in the Section 1404(a) calculus. Kerobo, 285 F.3d at 538. However, because Adena does not move to transfer under Section 1401(a) to enforce the Ohio selection clause, and it is Adena's burden to carry here, the Court will not address this issue further.

5

Wasco received payment, or evidence pertaining to the alleged fraud perpetuated on Wasco—is located in this District. See Reese, 574 F.3d at 320.

Further, to the extent Adena is concerned about bias in Wasco's favor in this District, it ignores that the very point of diversity jurisdiction is to lessen "the insidious home-court advantage." Adkins v. Advocat Inc., 2015 WL 1802838, at *4 (E.D. Ky. Apr. 17, 2015); see also Regis Assocs. v. Rank Hotels (Mgmt.) Ltd., 894 F.2d 193, 196 (6th Cir. 1990) ("We realize that some litigants perceive certain 'home court' advantages in litigating in a state court. However, this is one of the reasons why diversity jurisdiction still exists."). Thus, the Court rejects outright any assertion by Adena that Wasco, in having its principal place of business in Nashville, has a "home-court" advantage here. Accordingly, without good reason to find otherwise, the Court finds this factor weighs in favor of honoring Wasco's chosen venue. See id.

### B. The Convenience of the Parties

Adena bases its motion to transfer, in part, on its principal place of business is in Mansfield, Ohio, while Wasco's is in Nashville. (Doc. No. 15 at 3). Adena asserts that keeping the case in this District "unquestionably benefits" Wasco and is "inconvenient" for Adena. (Id.). In response, Wasco asserts that Adena is impermissibly attempting to shift the burden of litigation onto it with no logical reason for doing so. (Doc. No. 17 at 10).

The Court is not persuaded by Adena's argument. "A transfer at the behest of a defendant[,]" as Adena requests here, "is disfavored where it merely shifts the burden of litigating in an inconvenient forum to the plaintiff." Sacklow v. Saks Inc., 377 F. Supp. 3d 870, 879 (M.D. Tenn. 2019). This is essentially what Adena requests the Court to do here. Somewhat surprisingly, Adena does not request that this matter be transferred to a district court in Ohio, where it is located. Instead, Adena asserts that it would be more convenient for the parties to litigate this case in the Eastern District of Tennessee, where the Project is located, and where neither party resides.

While Adena's argument has some merit, it is tempered by Adena's own counterclaims that assert that Wasco's business email—presumably located in Nashville—was hacked, compromising its ability to properly track payments and its business relationship with Adena. (See Doc. No. 16 ¶¶ 33–50). These allegations suggest that the parties will have to visit both the Middle District of Tennessee and the Eastern District of Tennessee to resolve the parties' dispute, irrespective of where this case is tried. Adena cannot credibly contend that this District maintaining venue over this matter is inconvenient, particularly considering that it does not reside in either District. Given that Adena's request to transfer this case to the Eastern District of Tennessee merely attempts to shift the burden of litigation to *both* parties, the Court finds this factor weighs in favor of litigating this dispute in the Middle District of Tennessee. See Sacklow, 377 F. Supp. 3d at 879.

### C. The Convenience of the Witnesses

The convenience of witnesses, especially "*non-party* witnesses . . . is one of the most important factors in the transfer analysis." Smith, 578 F. Supp. 2d at 963 (citing Steelcase, Inc. v. Smart Techs., Inc., 336 F. Supp. 2d 714, 720–21 (W.D. Mich. 2004)). Adena asserts, without any evidence, see Hefferan, 828 F.3d at 498, that: the only "willing" witnesses in this case located in Nashville are Wasco's; its own witnesses are located in Ohio; and third-party witnesses related to the Project are all in the Eastern District of Tennessee. Adena argues that because the only third-party witnesses at issue are in the Eastern District of Tennessee, transfer is appropriate.

While Adena's arguments paint this case with a narrower brush than it alleges in its counterclaims is appropriate, its point is well-taken. True, as Wasco points out, Adena alleges that it was Wasco's hacked email system that caused the pay dispute between the parties regarding Wasco's work in Jefferson City. (See Doc. No. 16 ¶¶ 33–50). This set of events demonstrates that various third-party witnesses in different locations may be relevant to these proceedings,

7

including those related to the Project, IT personnel, and personnel at Lykel. Each are located in Jefferson City, Mississippi, and Texas, respectively. (See id. ¶ 41). Further, while not as relevant to this analysis, Smith, 578 F. Supp. 2d at 963, the party witnesses are likely located in different locations than the third-party witnesses: this District and in Ohio.

On this set of alleged facts, there are five different sets of witnesses pertinent to these proceedings in five different districts. This shows that regardless of the venue, some witnesses will be inconvenienced by future proceedings. Nevertheless, it is notable that some of the non-party witnesses are situated in the Eastern District of Tennessee, and it is not evident that any are in this District. Given this, the Court finds this factor weighs slightly in favor of transfer to the Eastern District of Tennessee. See Smith, 578 F. Supp. 2d at 963.

### D. Location and Access to Sources of Proof

The parties agree there are at least three primary locations of the sources of proof: Mansfield Ohio (Adena's principal place of business); Nashville, Tennessee (Wasco's principal place of business); and Jefferson City (the Project's location). Wasco also asserts that Texas and Mississippi—where Lykel and the PO Box Adena alleges it mailed payment to Wasco, and Wasco's IT team are located—are additional locations of proof. (See Doc. No. 16 ¶¶ 41, 43, 47, 90). The parties agree that the business records in Mansfield, Ohio and Nashville, Tennessee are accessible through technological means anywhere, making their locations of little relevance. See Doe v. University of Tennessee, 2016 WL 1253004, at *8 (M.D. Tenn. Mar. 29, 2016) (the location of evidence does not "carr[y] much weight in this age of technology"); see also Flight Sols., Inc. v. Club Air, Inc., 2010 WL 276094, at *5 n.7 (M.D. Tenn. Jan. 14, 2010) ("In light of current technology, which allows documents to be scanned and produced electronically, this does not factor heavily into the court's decision.").

8

Given this, the Court focuses on the remaining locations of proof: Jefferson City, Mississippi, and Texas. Wasco argues that the location of the Project matters little to the underlying disputed regarding its non-payment. But the Court finds this contention unpersuasive considering its own allegations that demonstrate Jefferson City is the location of the Project that the Subcontract is based on. (See generally Doc. No. 1). While the Court acknowledges Wasco's argument that Wasco's work done on the Project is not in dispute, it is surely relevant to the damages at issue. Accordingly, because some of the proof necessary to resolve this dispute is located in the Eastern District of Tennessee, the Court finds this factor weighs slightly in favor of transfer.

### E. The Locus of Operative Facts

The parties dispute where the locus of operative facts—an "important factor in resolving a motion to transfer venue"—is located. Sacklow, 377 F. Supp. 3d at 880 (citation and quotations omitted). On one hand, Wasco's allegations focus on the Subcontract, the Project, and Adena's nonpayment, centering around events located in the Eastern District of Tennessee and Ohio, respectively. On the other, Adena's allegations focus on Wasco's hacked system in Nashville, Tennessee, and its check to Wasco sent to the wrong address and person in Texas. Somewhat perplexingly, the parties assert that each other's allegations control here. Because the Court cannot surmise at this stage of the litigation where the true locus of operative facts lies, it finds this factor to be neutral in the transfer analysis.

### 2. Public Interest Factors

The Court turns to considering the public interest factors of "systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" Langley v. Prudential Mortg.. Capital Co., LLC, 546 F.3d 365, 370 (6th Cir. 2008) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "Public-interest factors include 'administrative

9

difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" Hefferan, 828 F.3d at 500 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (quotations and citation omitted)). To evaluate these factors, courts "must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum" which will typically "thrust the court into the merits of the underlying dispute." Van Cauwenberghe, 486 U.S. at 528.

Adena concedes that the majority of the public interest factors are neutral. The Court finds this concession to be an understatement, as there is nothing in the record to suggest that the Eastern District of Tennessee's docket is more congested than this Court's, that hearing this case in this District will pose unnecessary problems with relevant laws that would not otherwise exist if transferred, or that citizens in this forum would be anymore burdened by jury duty than those in the Eastern District. See Hefferan, 828 F.3d at 500. Accordingly, all of these factors weigh in favor of honoring Wasco's choice of this District as the proper venue.

Adena asserts it is only the local interest factor that weighs heavily in favor of transfer. In support, Adena contends that: (1) Wasco's allegations focused on the Project located at Carson-Newman University implicate the interests of that community and Project members in resolving this dispute; and (2) this action will overlap with Wasco's state court mechanics' lien action pending in Jefferson County Chancery Court. Wasco disagrees. First Wasco argues the community of Jefferson City has no stake in deciding a controversy about payments between the parties that originated in Ohio, should have been sent to the Middle District of Tennessee, and

allegedly were sent to Texas. Second, any reference to Wasco's *in rem* state court action is irrelevant. This is because the lien at issue was just recently bonded off, so future enforcement action will be an action on bond.

While the locus of operative facts is a disputed issue, see supra, Section III.1.E, the Court finds the local interest in this District resolving this dispute makes sense, considering Wasco should have made payment in this forum. See Van Cauwenberghe, 486 U.S. at 528. That other potentially culpable conduct may have occurred elsewhere—in the Eastern District of Tennessee, Mississippi, Ohio, and Texas—does not move the needle enough to satisfy Adena's significant burden here. See Hefferan, 828 F.3d at 498 (to warrant transfer, movant must show the chosen district is unnecessarily burdensome).

Further, Adena's Answer and Counterclaims do not suggest that Wasco failed to provide the contracted-for work or materials. Likewise, this case does not implicate Wasco's adherence to lien law. The issues here do not involve "precisely the same issues" as those pending in the Jefferson County Chancery Court, obviating the need to transfer there. Continental Grain Co. v. The FBL0585, 364 U.S. 19, 26 (1960) (section 1404(a) is designed to prevent "a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts"); see Tenn. Code Ann. § 66-11-101, et seq. (describing requirements for a lien enforcement action under Tennessee law). That Adena is not even a defendant in the Jefferson County Chancery Court action underscores this point. See Jefferson County Chancery Court, Case No. 25-cv-51, Wasco, Inc. v. Carson-Newman University and UHS-Carson-Newman, LLC. Accordingly, the Court finds all of the public interest factors weigh in favor of this case remaining in the Middle District of Tennessee.

On this record, Adena has not shown the balance of the public and private interest factors "strongly" weighs in favor of transfer to the Eastern District of Tennessee. See Reese, 574 F.3d at 320. Rather, in considering all of the relevant factors, the Court finds that the public interest, Wasco's interest in selecting the venue of its choosing, and the convenience of the parties all weigh in favor of honoring Wasco's chosen venue. Adena has failed to demonstrate that it is any more burdened than any other defendant by keeping this case in the Middle District of Tennessee. The Court will deny Adena's Motion (Doc. No. 14).[4] See Hefferan, 828 F.3d at 498; see also See Jackson, 421 F. App'x at 484 (courts have "broad discretion" in determining venue matters).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Adena's Motion to Ascertain Status (Doc. No. 24) and will deny Adena's Motion to Transfer Venue (Doc. No. 14).

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Notably, there is also a procedural ground to deny Adena's Motion (Doc. No. 14). As Wasco emphasizes in its response, Adena failed to comply with Local Rule 7.01(a)(1), which required Adena to confirm with the Court that (1) it had met and conferred with Wasco's counsel prior to filing and (2) whether Wasco opposed Adena's requested relief. See M.D. Tenn. L.R. 7.01(a)(1); see also Weil, 278 U.S. at 169. Adena concedes its noncompliance, calling it an "oversight" and arguing that even if it had complied, Wasco's response "makes it clear that the parties would be in the same position that they are in now." (Doc. No. 18 at 5). The Court questions Adena's assertion, given the purpose of meeting and conferring with opposing counsel is, in part, to determine whether they can reach resolution without the Court's input. While the Court does not deny Adena's Motion (Doc. No. 14) on this basis, it reminds the parties that the Local Rules are not mere formalities. Rather, they should be strictly adhered to in order to ensure the parties' and the Court's resources are not wasted.